## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**YOMAIRA M.,**[1]

      **Plaintiff,**

                                       **Case No. 2:20-cv-17462**

    **v.**                                 **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Yomaira M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On March 30, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since September 1, 2016. R. 82, 100, 187–88. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

upon reconsideration. R. 117−21, 123−25. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 126−27. Administrative Law Judge ("ALJ") Peter Lee held a hearing on May 31, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 34−77. In a decision dated September 18, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 1, 2016, her alleged disability onset date, through September 30, 2018, the date on which she was last insured for DIB. R. 15−27. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 1, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 3, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On May 5, 2021, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

Under the substantial-evidence standard, a court looks to an existing administrative

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 34 years old on September 30, 2016, *i.e.,* the date on which she was last insured. R. 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 1, 2016, her alleged disability onset date, and that date. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease with radiculopathy, fibromyalgia, arthritis in multiple joints, depressive disorder, anxiety, migraine headaches, necrosis of the hips, and gastroenteritis. *Id*.  The ALJ also found that the following impairments were not severe: gastroesophageal reflux disease, irritable bowel syndrome, and pituitary microadenoma. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18−21.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 21−26. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a conveyor belt package sorter R. 25−26.

In the alternative, at step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs−*e.g.,* approximately 538,000 jobs as an inspector/hand packager; approximately 55,000 jobs as a photocopy machine operator; and approximately 86,000 jobs as a sealing/canceling machine operator−existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 26−27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 1,

2016, her alleged disability onset date, through September 30, 2016, the date on which she was last insured. R. 27.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 20; *Plaintiff's Reply Brief*, ECF No. 24. The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 23.

## IV.    RELEVANT MEDICAL EVIDENCE

### A.    Amil Kapoor, M.D.

In a letter dated June 6, 2016, Amil Kapoor, M.D., Plaintiff's treating rheumatologist, advised as follows:

> The patient mentioned above [Plaintiff] has been under my care since 06/02/2015. She has seronegative inflammatory polyarthritis and fibromyalgia. She is limited in daily activities and is unable to work on a sustained basis. My findings have been confirmed through physical examination and medical history. In my opinion, [Plaintiff] is unable to resume any type of gainful employment due to physical impairment. Her condition has no cure and my expectation is that her condition will decline in function over time.

R. 366 (Exhibit 5F/6).

On February 13, 2017, Dr. Kapoor completed a five-page fill-in-the-blank and check-the-box form entitled, "Disability Impairment Questionnaire." R. 348−52 (Exhibit 2F). Dr. Kapoor indicated that he had treated Plaintiff on a monthly basis since June 2015, and had most recently examined her on February 13, 2017. R. 348. He diagnosed chronic fibromyalgia, inflammatory polyarthritis, and degenerative joint disease in her knees, and indicated that Plaintiff's painful,

swollen joints, "painful trigger fibromyalgia spots," and poor hand grips support these diagnoses. *Id*. Dr. Kapoor expected Plaintiff's impairments to last at least 12 months, and he identified Plaintiff's primary symptoms as chronic joint pain throughout her body, and chronic fatigue and weakness. R. 348–49. Plaintiff's pain was precipitated or aggravated by physical work, emotional aggravation, and changes in the weather. R. 349. Prescription medication was Plaintiff's only identified treatment. *Id*. According to Dr. Kapoor, Plaintiff could sit and stand/walk for about one hour in an eight-hour workday. R. 350. Plaintiff must avoid continuous sitting in an eight-hour workday, but it was not necessary for her to elevate her legs while sitting. *Id*. Plaintiff also had significant limitations in reaching, handling, and fingering: she could occasionally (up to one-third of an eight-hour workday) grasp, turn and twist objects with both hands; occasionally use bilateral hands/fingers for fine manipulations; and occasionally use her arms for reaching (including overhead). R. 351. Noting that Plaintiff would have increased stiffness and muscular pain, Dr. Kapoor stated that Plaintiff's symptoms were likely to increase if she were placed in a competitive work environment. *Id*. Dr. Kapoor opined that Plaintiff would frequently (from one-third to two-thirds of an eight-hour workday) experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration. *Id*. Dr. Kapoor also opined that Plaintiff would need to take unscheduled breaks lasting 30 minutes every hour during an eight-hour workday. *Id*. Moreover, Plaintiff was likely to be absent from work more than three times a month as a result of her impairments or treatment. R. 352. He denied that Plaintiff's emotional factors contributed to the severity of her symptoms and functional limitations. *Id*. Plaintiff's symptoms and related limitations had existed for at least eight years, and the objective findings were reasonably consistent with Plaintiff's symptoms and functional limitations. *Id*.

On June 15, 2018, Dr. Kapoor completed a five-page fill-in-the-blank and check-the-box

form entitled, "Multiple Impairment Questionnaire." R. 472−76 (Exhibit 11F).[4] Dr. Kapoor

offered many of the same opinions except that he diagnosed rheumatoid arthritis and opined that

Plaintiff could sit for two hours and stand/walk for less than one hour in an eight-hour workday;

that she must get up from a seated position during an eight-hour workday every 30 minutes for a

total of 15 minutes each time; and she could occasionally lift and carry up to ten pounds. R. 472−

74. Plaintiff could occasionally (up to one-third of an eight-hour workday) grasp, turn, and twist

objects bilaterally and use her arms for reaching (including overhead), but could never/rarely use

her hands/fingers for fine manipulations. R. 475. Dr. Kapoor again opined that Plaintiff's

symptoms were likely to increase if she were placed in a competitive work environment, noting

she would experience increased stiffness and muscular pain and that she would frequently (from

one-third to two-thirds of an eight-hour workday) experience pain, fatigue, or other symptoms

severe enough to interfere with attention and concentration. *Id*. Like his opinion from February

2017, Dr. Kapoor opined that Plaintiff was likely to be absent from work more than three times a

month; denied that Plaintiff's emotional factors contributed to the severity of her symptoms and

functional limitations; and found that that the objective findings were reasonably consistent with

Plaintiff's symptoms and functional limitations. R. 476. However, unlike the February 2015

opinion, Dr. Kapoor also opined that Plaintiff's symptoms and related limitations had begun in

June 2015. *Id.*

On October 5, 2018, Dr. Kapoor completed a seven-page fill-in-the-blank and check-the-

box form entitled, "Arthritis Impairment Questionnaire." R. 477−83 (Exhibit 12F).[5] He

diagnosed rheumatoid arthritis. R. 477. When asked to identify the clinical findings that

---

[4] A duplicate of this form also cited by the ALJ, R. 24, appears at Exhibit 22F, R. 676−80.
[5] A duplicate of this form also cited by the ALJ, R. 24, appears at Exhibit 23F, R. 681−88.

demonstrate and/or support his diagnosis, Dr. Kapoor reported that Plaintiff had limited range of motion in her wrists and finger joints; joint tenderness in her wrists, finger joints, knees, ankles, and toes; joint swelling in wrists, fingers, knees, ankles, and toes; and joint deformity in her MCP and PIP joints, and that Plaintiff complained of semi-claw hands; joint warmth in all of these joints; redness in all finger joints; multiple trigger points in all four body quadrants; decreased grip strength (2+ on left and right); and abnormal gait with painful knees and ankles and antalgic gait. R. 477−78. He also identified a positive Vectra score that "went from 16 (mid-range) to 27 High." R. 479. Treatment consisted of prescribed medications and physical therapy. *Id.* Dr. Kapoor opined, *inter alia*, that, in an eight-hour workday, Plaintiff could sit for two hours and stand/walk for less than one hour; must get up from a seated position every half hour for fifteen minutes; elevate her right leg to chest level or higher; and occasionally (up to one-third of an eight-hour day) lift and carry up to ten pounds. R. 481. Plaintiff could occasionally grasp, turn, and twist objects bilaterally and could occasionally use her arms for reaching (including overhead), but she could never/rarely use her hands/fingers for fine manipulations. R. 482. Dr. Kapoor again opined that Plaintiff's symptoms were likely to increase if she were placed in a competitive work environment, that she would frequently (from one-third to two-thirds of an eight-hour workday) experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration, that she was likely to be absent from work more than three times a month; and that Plaintiff's emotional factors did not contribute to the severity of her symptoms and functional limitations. R. 482−83. Again, Dr. Kapoor stated that the objective findings in the questionnaire were reasonably consistent with Plaintiff's symptoms and functional limitations and that her symptoms and related limitations existed as of June 2015. R. 483.

In a letter dated October 26, 2018, Dr. Kapoor advised as follows:

The patient mentioned above [Plaintiff] has been under my care since 06/02/2015. She has seronegative inflammatory polyarthritis and fibromyalgia. She is limited in daily activities and is unable to work on a substained [sic] basis. My findings have been confirmed through physical examination as well as her medical history. In my opinion, [Plaintiff] is unable to resume any type of gainful employment due to physical impairment. Her condition has no cure and my expectation is that her condition will decline in function overtime.

R. 689 (Exhibit 24F).

## B.     Michael Barth, M.D.

On May 31, 2019, Michael Barth, M.D., Plaintiff's treating rheumatologist, completed an

eight-page fill-in-the-blank and check-the-box form entitled, "Arthritis Impairment

Questionnaire." R. 794–801 (Exhibit 29F). Dr. Barth noted that he treated Plaintiff every four to

eight weeks beginning on February 18, 2019, and that he had most recently examined her on

May 23, 2019. R. 794. He diagnosed fibromyalgia, rheumatoid arthritis, and aseptic necrosis of

the left hip. *Id*. When asked to identify the clinical findings that demonstrate and/or support his

diagnosis, Dr. Barth referred to limited range of motion in Plaintiff's wrists, fingers, hips, knees;

joint tenderness and joint swelling in her wrists, fingers, knees, ankles, cervical spine, lower

back, and arms; joint deformity and joint warmth in her MCP and PCP joints; redness in all

finger joints; decreased grip strength (left, 2+; right, +2); and abnormal gait that is antalgic "due

to knee pain / left hip pain[.]" R. 794–95. According to Dr. Barth, Plaintiff has good days and

bad days and he explained that her hands are swollen and painful, that she has left hip pain, and

cervical and lumbar spine pain on a daily basis. R. 797. Plaintiff was able to travel between her

house and his medical office, prepare meals, and sometimes take care of personal hygiene, but

she could not sort and handle paper (such as mail or forms) or ambulate effectively. *Id*. Dr. Barth

opined that, in an eight-hour workday, Plaintiff could sit for two hours, stand/walk for less than

one hour, and get up from a seated position to move around every thirty minutes for fifteen

minutes before returning to a seated position. R. 798. Dr. Barth also opined that Plaintiff could occasionally (up to one-third of an eight-hour day) grasp, turn, and twist objects bilaterally and use bilateral arms for reaching (including overhead), but could never/rarely use her hands/fingers for fine manipulations. R. 799. Plaintiff's symptoms were likely to increase if she were placed in a competitive work environment; she would frequently (from one-third to two-thirds of an eight-hour workday) experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration; she would need to take unscheduled breaks during an eight-hour workday every thirty minutes for fifteen minutes before returning to work; she was likely to be absent from work more than three times a month; and her emotional factors "possibly" contributed to the severity of her symptoms and functional limitations. R. 799–800. According to Dr. Barth, Plaintiff's symptoms and functional limitations were reasonably consistent with his clinical and/or objective findings and he stated that Plaintiff's symptoms and related limitations had existed since September 1, 2016. R. 800.

## C.    Alana Young, PA-C

On October 18, 2018, Alana Young, PA-C, completed a six-page check-the-box and fill-in-the-blank form entitled, "Multiple Impairment Questionnaire." R. 484–89 (Exhibit 13F). PA-C Young noted that she had treated Plaintiff every three to six months beginning on November 16, 2017, and had examined her most recently on October 9, 2018. R. 484. PA-C Young diagnosed rheumatoid arthritis and she identified the following to support her diagnosis: joint deformities of MCP and PIP joints, tenderness in all bilateral wrists and fingers, and Dr. Kapoor's diagnosis. *Id*. Plaintiff's impairments were expected to last at least twelve months. *Id*. Plaintiff's primary symptoms were daily joint pain in her wrists, fingers, knees, and ankles, and that the pain was precipitated or aggravated by working in the morning and by prolonged

immobility. R. 485. Plaintiff used prescribed medication and had engaged in physical therapy since July 2018. *Id.* In an eight-hour workday, Plaintiff could sit for two hours and stand/walk for less than one hour; she must arise from a seated position every hour, for fifteen minutes, before returning to work; she must elevate her right leg to waist level; and she could occasionally (up to one-third of an eight-hour day) lift and carry up to ten pounds. R. 486. PA-C Young also opined that Plaintiff could occasionally (up to one-third of an eight-hour day) grasp, turn, and twist objects bilaterally and use her arms for reaching (including overhead), but she could never/rarely use her hands/fingers for fine manipulations. R. 487. Plaintiff's symptoms were likely to increase if she were placed in a competitive work environment through her "joint flares"; Plaintiff would frequently (from one-third to two-thirds of an eight-hour workday) experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration; she would need to take unscheduled breaks during an eight-hour workday every hour, for fifteen to thirty minutes, before returning to work; she was likely to be absent from work two or three times a month; Plaintiff's emotional factors did not contribute to the severity of her symptoms and functional limitations. R. 487–88. According to PA-C Young, Plaintiff's symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings. R. 488. Asked when Plaintiff's symptoms and related limitations arose, PA-C Young responded, "Per Rheum, 6/2 2015, however I have only seen pt since 11/6/17[.]" *Id.*

On May 30, 2019, PA-C Young completed a five-page check-the-box and fill-in-the-blank form entitled, "Multiple Impairment Questionnaire." R. 789–93 (Exhibit 28F). PA-C Young again diagnosed rheumatoid arthritis and again joint deformities of MCP and PIP joints, tenderness to all wrists, fingers, ankles, and knees, and Dr. Kapoor's diagnosis as support for her diagnosis. R. 789. According to PA-C Young, Plaintiff could sit for two hours and stand/walk for

14

less than one hour in an eight-hour workday; must get up from a seated position every half hour for fifteen minutes before returning to work; elevate her right leg to chest level or higher; and occasionally (up to one-third of an eight-hour day) lift and carry up to ten pounds. R. 791. Plaintiff could occasionally (up to one-third of an eight-hour day) grasp, turn, and twist objects bilaterally and use her arms for reaching (including overhead), but could never/rarely use her hands/fingers for fine manipulations. R. 792. Plaintiff's symptoms were likely to increase if she were placed in a competitive work environment due to "joint swelling w/ flareups − pain [with] work worsens;" she would frequently (from one-third to two-thirds of an eight-hour workday) experience pain, fatigue, or other symptoms severe enough to interfere with attention and concentration; she needed to take daily unscheduled 30-minute breaks during an eight-hour workday, every thirty minutes, before returning to work; she was likely to be absent from work more than three times a month; and her emotional factors did not contribute to the severity of her symptoms and functional limitations. R. 792−93. According to PA-C Young, Plaintiff's symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings. R. 793. Plaintiff's symptoms and related limitations had existed since at least September 1, 2016, and in PA-C Young's opinion, Plaintiff was "crippled w/ active polyarticular arthritis [and illegible]." *Id.*

### D.    Justin Fernando, M.D.

On July 13, 2017, Justin Fernando, M.D., conducted a consultative examination of Plaintiff. R. 390−95 (Exhibit 6F). Dr. Fernando noted the following:

> She is 5 feet 4 inches in her height and she weighs 144 pounds. She is right-handed. Examination of her gait indicates a normal pattern of walking. The even surface in the examination room she walked on it without any difficulty maintaining a reasonable pace and normal stride. The squat was incomplete, but walking on her toes and walking on her heels both done without any significant difficulty. The examination began with the examination of the upper extremities particularly her

hands and wrists where she complained of pain and the onset of her symptoms might have all begun with the wrists and the fingers some years ago. There is full range of motion in the fingers of both hands. When it came to making a fist, she claimed to have difficulty but when testing for her grip and pinch strength, she was able to make enough pressure on the fingers of the examiner. The grip strength and pinch strength both amounted to a normal 5/5. Muscle distribution intrinsic to the hands showed normal muscles displayed over the dorsum and the palmar aspect of both hands. None of the muscles showed any evidence of atrophy. There is tenderness over the wrists, over the dorsum in particular, but the range of motion in dorsiflexion, palmar flexion, and lateral movements appear completely full range. Joint movements in the fingers at the proximal and distal IP joints, at the MCP joints bilaterally, and at the carpal joints of both wrists, all of them show full range of motion and no evidence of any morphological changes in the joints. The pain aspect of her fingers when they are flexed, when they are extended, and the wrists in dorsiflexion, palmar flexion were all not accompanied by any significant degree of pain, but she does have tenderness over the dorsal aspect of both wrists. No effusion is identified. Full range of motion is identified at the shoulders, elbows, forearms, wrists, and fingers bilaterally and no evidence of any morphological changes identified in any of the joints of either hand. This does not refute the fact that she is in pain but the arthritic problem has not caused any changes in the joints as yet that could be identified in a clinical examination. Muscles are equally represented on the right and left sides of the upper extremities. Tendon reflexes are intact at all 3 tendons in both upper extremities. The examination of the lower extremities revealed as reduced flexion and extension in the left knee amounting to about 130 degrees and 150 degrees on the right knee. There is no evidence of any chronic changes in either knee and no evidence of any effusion in either knee joint. She does not reveal any tenderness in the joint line of either knee. Full range of motion identified at the hips bilaterally and at both ankles. Muscles equally represented in the lower extremities. The measurement of the calf muscles on the right and left showed 33 cm bilaterally. She did complain of some pain when passively rotating in the right hip in external and internal rotation, but there is full range of motion identified at both hips. Both ankles reveal full range of motion in dorsiflexion and in plantar flexion. Tendon reflexes show brisk 2+ response at both quadriceps and at both Achilles tendons. Movements in the cervical spine show minor degrees of abbreviated range of motion in extension as well as in rotation. In the lumbar spine, flexion and extension limited to 70 degrees but lateral movements to the right and left show full range of movements. Straight leg raising test amounted to 30 degrees bilaterally when she lays supine and sitting upright the extension of the legs reached 80 degrees on her right and 75 degrees on her left.

R. 391−92. Dr. Fernando provided the following diagnoses:

1. History of joint pains which began at both wrists and in the small joints of the fingers in both hands now includes the knees, ankles, and the right hip.

2. Motor vehicular accident in 2013, and a year later a lumbar laminectomy

16

(possibility of some degenerative changes in the lower lumbar region of the spine, but reflexes at both quadriceps and Achilles tendons being as good as they are, it seems unlikely that there is not any continued pressure on the lateral roots at L5 and/or S1.

3. History of asthma.

R. 392. Dr. Fernando opined:

The claimant's history of pain that is symmetric in the right and left wrists and in the small joints of the fingers on the right and left indicates the clinical likelihood of rheumatoid arthritis. There is as yet no visible changes in the joints as visible sign that could be identified in a clinical exam. It does not refute the fact that she is in pain and that the diagnosis had been clinched by the finding of rheumatoid factor in the blood. *It is possible that handling things particularly things that are heavy using the hands may pose considerable difficulty with pain as she claims,* and although there is no clinical evidence of any abnormality identified in the weightbearing areas of the spine or the lower extremities*, it is very likely that weightbearing and walking could be painful also*. Morphologically however that is no change identified in any of the peripheral joints.

R. 392−93 (emphasis added).

### E.    State Agency Reviewing Physicians (Physical Limitations)

Nancy Simpkins[6] conducted an initial review of Plaintiff's medical record on July 26, 2017. R. 94−95, 98−99. The record documented that Plaintiff was a "33 year old female with non specific inflammatory arthritis. [C]laimant is limited in heavy lifting and extended walking. [C]laimant[']s fibromyalgia is covered by this RFC." R. 94. This reviewer opined that Plaintiff could occasionally (cumulatively one-third or less of an eight-hour day) lift and/or carry 20 pounds; frequently (cumulatively more than one-third up to two-thirds of an eight-hour day) lift and/or carry 10 pounds; sit and stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour work day; and push and/or pull without limit. R. 94. Plaintiff could occasionally climb ramps/stairs, ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and

---

[6] This reviewer's credentials do not appear in the record.

crawl. R. 94−95. She had no manipulative, visual, communicative, or environmental limitations. R. 95. This reviewer considered Dr. Kapoor's opinions from June 1, 2017, and February 13, 2017, but found that those opinions are "without substantial support from the medical source who made it, which renders it less persuasive." R. 97. The reviewer opined that Plaintiff was limited to unskilled light work because of her impairments. R. 98.

James Paolino[7] reviewed Plaintiff's medical record upon reconsideration for the state agency on November 30, 2017. R. 109−10, 112−14. He summarized the medical evidence as demonstrating that Plaintiff is a "33yo woman who maintains independence in ADL. DX. RA & Fibromyalgia. PE finds good joint function, no swelling. No allegation of worsening, no new ME. The RFC is affirmed as written." R. 110; *see also* R. 113 (finding Plaintiff was limited to unskilled light work).

## V.    DISCUSSION

### A.    RFC and Opinion Evidence

Plaintiff challenges the ALJ's consideration of multiple medical opinions, including the opinions of Dr. Kapoor, Dr. Barth, and PA-C Young. *Plaintiff's Brief*, ECF No. 20, pp. 33−44; *Plaintiff's Reply Brief*, ECF No. 24, pp. 1−5. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v.*

---

[7] This reviewer's credentials do not appear in the record.

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[8] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and

---

[8] As previously noted, Plaintiff's claim was filed on March 30, 2017.

consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability

factor, the regulation provides that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency

factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior

administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of

medical opinions and prior administrative medical findings" and articulate in the "determination

or decision how persuasive [he] find[s] all of the medical opinions and all of the prior

administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

"Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency'

factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how

he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567,

2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2)).

At step four of the sequential evaluation process, the ALJ in this case found that Plaintiff

had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that, through the date last
> insured, the claimant had the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) except the claimant can never climb ropes, ladders,
> or scaffolds; never be exposed to unprotected heights or hazardous machinery;
> occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally
> stoop and crouch; occasional reaching overhead and frequent reaching in all other

directions; frequent fingering and handling; occasionally balance; and the claimant is able to do only simple and routine tasks.

R. 21. In reaching this determination, the ALJ found, *inter alia*, that the opinions of Dr. Kapoor, Dr. Barth, and PA-C Young (collectively, the "treating opinions" and "treating providers") were not persuasive, reasoning as follows:

> Anil Kapoor, M.D., opined that the claimant could sit for about one hour, stand and walk for about one hour, occasionally perform manipulative activities, needs to take unscheduled breaks, and would be absent more than three times per month (2F). At other exams, Dr. Kapoor affirmed those opined limitations, except he limited the claimant to never or rarely using her hands or fingers for fine manipulation and standing and walking for less than one hour (11F, 12F, 22F, 23F). Alana Young, PA-C, and Michael Barth, M.D., also affirmed those opined limitations (13F, 28F, 29F). Subsequently, Dr. Kapoor opined that the claimant was unable to work (5F/6, 24F). These opinions are not found to be persuasive. While they are supported by detailed explanations, the opined limitations are not supported by the exam findings and are not consistent with the overall evidence of record. Here, diagnostic imaging did not reveal any bone destruction (6F/1). She does not have any history of fluid accumulation in her joints and there was no evidence of any fluid removal from any of her joints (6F/1). The claimant had full range of motion in her fingers, hands, and wrists (6F/2). She also had normal grip and pinch strength (6F/2). She had full range of motion in her hips and knees (6F/3). There was also no evidence of any muscle atrophy (6F/2). Additionally, the claimant had normal musculoskeletal strength (8F/45, 19F/5). She had a normal gait (4F/2, 6F/2, 8F/14). Range of motion testing was within normal limits at another exam (4F/2). While she had an incomplete squat, the claimant was able to walk on her heels and toes without any difficulty (6F/2). She was able to rise from a seated position without assistance (8F/14, 30). Her sensation was intact (8F/14, 30). Moreover, providers noted that the claimant did not require any assistive device for ambulation (12F/4, 23F/2, 29F/4). As such, the evidence does not support the less than sedentary limitations or the inability to work.

R. 24–25.

Plaintiff raises several challenges to the ALJ's consideration of the treating opinions. *Plaintiff's Brief*, ECF No. 20, pp. 33–44; *Plaintiff's Reply Brief*, ECF No. 24, pp. 1–5. Plaintiff first argues that the ALJ erred in discounting these opinions because they were supported by specific evidence identified by the treating providers and were consistent with Plaintiff's longitudinal treatment history. *Plaintiff's Brief*, ECF No. 20, pp. 33–37. Plaintiff's argument is

not well taken. While it is true that the treating providers cited to evidence to support their opinions, the ALJ explained, as detailed above, how clinical and objective record evidence—including including no bone destruction in diagnostic imaging; no history of fluid accumulation in Plaintiff's joints; no evidence of any fluid removal from any of her joints; full range of motion in her fingers, hands, wrists, hips, and knees; normal grip and pinch strength; normal musculoskeletal strength; no evidence of any muscle atrophy; the ability to walk on her heels and toes without any difficulty and rise from a seated position without assistance; intact sensation; and no assistive device required for ambulation—failed to support, and was inconsistent with, the treating providers' extreme limitations. R. 24−25. Based on this record, the Court cannot find that the ALJ failed to properly consider the supportability and consistency of the treating opinions in accordance with the governing regulation. *See* 20 C.F.R. § 404.1520c(c)(1)−(2); *see also Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings).

Plaintiff nevertheless insists that the ALJ's reliance on "normal" medical findings is simply the ALJ's lay interpretation of medical data and cannot override a contrary "diagnosis or conclusion by someone who is trained in the medical field, particularly Drs. Kapoor and Barth

who spend four years in medical school, followed by three years of residency and then invariably a fellowship or post-graduate training." *Plaintiff's Brief*, ECF No. 20, 36–37; *Plaintiff's Reply Brief*, ECF No. 24, pp. 1–2, 5. This Court disagrees. As a preliminary matter, it is the ALJ—not treating providers—who is required to make the ultimate RFC and disability determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In addition, as noted above, the ALJ in this case properly considered normal objective findings as well as Plaintiff's full range of motion, intact sensation, and ability to rise from a seated position without assistance, when evaluating the persuasiveness of the treating opinions under 20 C.F.R. § 404.1520c(1)–(2). R. 24–25; *see also Crossley*, 2021 WL 6197783, at *11; *Aponte*, 2021 WL 4963545, at *7.

To the extent that Plaintiff points to other evidence in the record that she believes supports the treating opinions' extreme limitations, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff goes on to complain that the ALJ relied "primarily" on non-treating sources that the ALJ admitted were at least partially deficient. *Plaintiff's Brief*, ECF No. 20, pp. 38–40;

*Plaintiff's Reply Brief*, ECF No. 24, p. 4. Plaintiff specifically complains that the ALJ credited

and wrongly drew negative inferences from Dr. Fernando's consultative opinion even though it

was vague; Plaintiff also argues that the ALJ should have followed up with Dr. Fernando to

clarify that opinion. *Id.* Plaintiff's arguments are not well taken. To the extent that the ALJ relied

on Dr. Fernando's objective medical findings, *i.e.*, no history of any fluid accumulation in joints;

full range of motion in fingers, hands, wrists, hips, and knees; and normal grip and pinch

strength; and normal gait, the Court has already explained that the ALJ did not err in relying on

this objective evidence when evaluating the opinion evidence.

The Court also finds no error in the ALJ's consideration of Dr. Fernando's opinion,

which provides as follows:

> Justin Fernando, M.D., a consultative examiner, opined that the claimant might
> have difficult handling heavy objects and weight bearing as well as walking could
> be painful (6F). This opinion is found to be partially persuasive. While the opinion
> is supported by an explanation and detailed exam, the opinion does not specify what
> is meant by "heavy" and does not specify the degree of limitation in regards to
> walking. Here, diagnostic imaging did not reveal any bone destruction (6F/1). She
> does not have any history of fluid accumulation in her joints and there was no
> evidence of any fluid removal from any of her joints (6F/1). The claimant had full
> range of motion in her fingers, hands, and wrists (6F/2). She also had normal grip
> and pinch strength (6F/2). She had full range of motion in her hips and knees (6F/3).
> There was also no evidence of any muscle atrophy (6F/2). Additionally, the
> claimant had normal musculoskeletal strength (8F/45, 19F/5). She had a normal
> gait (4F/2, 6F/2, 8F/14). Range of motion testing was within normal limits at
> another exam (4F/2). While she had an incomplete squat, the claimant was able to
> walk on her heels and toes without any difficulty (6F/2). She was able to rise from
> a seated position without assistance (8F/14, 30). Her sensation was intact (8F/14,
> 30). Moreover, providers noted that the claimant did not require any assistive
> device for ambulation (12F/4, 23F/2, 29F/4).

R. 25. Because Dr. Fernando opined that it "is possible" that handling "things that are heavy"

"may pose considerable difficulty with pain as she claims" and that "weightbearing and walking

could be painful also[,]" the ALJ properly discounted, in part, this vague opinion and found it

only partially persuasive. R. 392−93; *cf. Rice v. Kijakazi*, No. 3:20-CV-00750-RSE, 2022 WL

345652, at \*4 (W.D. Ky. Feb. 4, 2022) (finding the ALJ appropriately accepted one physician's findings instead of accepting another physician's "ambiguous limitation on 'safety-sensitive duties' generally and walking or standing 'for long periods'"); A*ywalt v. Kijakazi*, No. 1:20CV277, 2021 WL 3679304, at \*10 (M.D.N.C. Aug. 19, 2021) ("Without quantifying 'a longtime [sic]' (Tr. 564), Dr. Williams's opinion lends little guidance to the ALJ in determining how long Plaintiff could stand."); *Cynthia D. v. Saul*, No. 1:19-CV-03075-JTR, 2020 WL 3620091, at \*4 (E.D. Wash. Apr. 28, 2020) ("With respect to Dr. Pellicer's opinion that Plaintiff could stand or walk for six hours in a workday with frequent breaks, Dr. Pellicer failed to explain what she meant by 'frequent.' It is unclear whether she was indicating more frequent breaks than would be normally allowed throughout the workday. Because this statement is vague and imprecise, the Court finds the ALJ was not required to credit or reject it.").

Although Plaintiff contends that the ALJ should have recontacted Dr. Fernando to clarify his vague opinion, *Plaintiff's Brief*, ECF No. 20, p. 39 (citing 20 C.F.R. § 404.1519p), this Court disagrees. The regulatory provision on which Plaintiff relies provides that "[i]f the [consultative examiner's] report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." *Id.* at § 404.1519p(b). However, "the ALJ only need recontact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled, not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records." *Gladden o/b/o Hyman-Self v. Berryhill*, 2018 WL 1123763, at \*6 (E.D. Pa. Feb. 28, 2018) (internal quotation marks omitted) (quoting *Kelly v. Colvin, C.A.* No. 09-759-RGA-SRF, 2013 WL 5273814, at \*16 (D. Del. Sept. 18, 2013)). Notably, "[t]here is no obligation to

recontact a medical source when the ALJ finds that the record as a whole provides an adequate basis to determine whether the claimant is disabled." *Id.* As detailed above, the ALJ considered years of objective medical evidence as well as the opinions of treating and reviewing physicians and implicitly determined that he had sufficient information from the record as a whole to reach a conclusion. Under the circumstances presented in this case, the ALJ was not required to recontact Dr. Fernando.

The Court is likewise not persuaded that the ALJ impermissibly drew adverse inferences from Dr. Fernando's opinion. *Plaintiff's Reply Brief*, ECF No. 24, p. 4. As previously discussed, the ALJ found Dr. Fernando's opinion only "partially persuasive," R. 25, and the RFC provides for, *inter alia*, light exertional work and frequent–as opposed to constant–fingering and handling. R. 21. Plaintiff has not explained how the ALJ erred to Plaintiff's prejudice when evaluating Dr. Fernando's opinion and crafting the RFC in light of that opinion. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Plaintiff also complains that the ALJ improperly relied on the opinions of the reviewing state agency physicians[9] even though they reviewed the record a year and a half before the end of the relevant period at issue and therefore did not have the benefit of the entire record. *Plaintiff's Brief*, ECF No. 20, pp. 40–41. Plaintiff's argument is not well taken. As a preliminary matter, state agency physicians are experts in Social Security disability programs. SSR 96-6p. An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical

---

[9] Plaintiff challenges the state agency opinions only as to her physical limitations.

evidence is later submitted. *Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). Furthermore, and to the extent that Plaintiff argues that the ALJ should have found the treating opinions more persuasive than the reviewing state agency opinions because of their status as treating providers, this Court has previously discussed that the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a).

Plaintiff also suggests that the ALJ improperly failed to consider the regulatory factors when assessing the treating opinions. *Plaintiff's Brief*, ECF No. 20, pp. 42−43. This Court disagrees. For the reasons already discussed, the ALJ properly considered the supportability and consistency of these opinions. R. 24−25; 20 C.F.R. § 404.1520c(1)−(2). Although the ALJ did not expressly note that Dr. Kapoor and Dr. Barth were specialists in rheumatology and the length of their treating relationships, the ALJ specifically referred to these opinions and to these providers' treatment records, R. 19, 22−25 (citing, *inter alia*, Exhibit 2F, R. 348−52; Exhibit 5F, R. 361−89; Exhibit 11F, R. 472−76; Exhibit 12F, R. 477−83; Exhibit 22F, R. 676−80, Exhibit 23F, R. 681−88; Exhibit 24F, R. 689; Exhibit 29F, R. 794−801), which reflect, *inter alia*, that

27

Dr. Kapoor and Dr. Barth are rheumatologists and how long they treated Plaintiff. In any event, any failure by the ALJ to expressly discuss these factors does not require remand where, as here, a comprehensive review of the record provides substantial support for the ALJ's evaluation of these treating opinions. *See* 20 C.F.R. §§ 404.1520c(b)(2) (explaining that the factors of supportability and consistency "are the most important factors" and that an ALJ "may, but [is] not required to, explain how" he considered other regulatory factors, including relationship with the claimant, specialization, and other factors), 416.920c(b)(2) (same); *Jarrett v. Kijakazi*, No. CV 21-1607, 2021 WL 6136936, at *5 (E.D. Pa. Dec. 29, 2021) (finding that the ALJ "satisfied" his regulatory duties when he "explained that the treatment records were only partly consistent with and supportive of" the medical opinion because an ALJ "must only explicitly discuss the two most important factors: consistency and supportability").

Finally, Plaintiff complains that it is unclear how the ALJ determined the RFC, particularly the physical functional limitations in the RFC: "It is certainly not supported by any medical opinions of record. This is reversible error in the Third Circuit." *Plaintiff's Brief*, ECF No. 20, pp. 43−44 (citing, *inter alia*, *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). Plaintiff's argument is not well taken. As a preliminary matter,

> *Doak* does not stand for the proposition that an ALJ cannot make an RFC determination in the absence of a medical opinion reaching the same conclusion. Such a rule would be inconsistent the Third Circuit's express holding that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."[] Rather, the Court in *Doak* held that the ALJ's opinion was unsupported because nothing in the record, which consisted of testimony and three medical reports, justified the ALJ's conclusion. Contrary to Plaintiff's contention, the more recent, nonprecedential Third Circuit and district court opinions on which the R & R relies clarify, rather than contradict, *Doak*'s holding, and make clear that an ALJ is not restricted to adopting the conclusions of a medical opinion in making an RFC determination.

*Cleinow v. Berryhill*, 311 F. Supp. 3d 683, 685 (E.D. Pa. 2018) (footnotes omitted); *see also*

*Chandler*, 667 F.3d at 362 (rejecting the claimant's argument that the ALJ applied "his own lay

opinion" regarding medical evidence when crafting the RFC and stating that "the ALJ is not

precluded from reaching RFC determinations without outside medical expert review of each fact

incorporated into the decision"); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006)

("There is no legal requirement that a physician have made the particular findings that an ALJ

adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is

part of the ALJ's duties."). As previously discussed, the ALJ sufficiently explained his

consideration of the treating opinions in accordance with the applicable regulations and the

medical and other evidence as a whole when crafting the RFC. R. 24−25.

 In short, for all these reasons, the Court concludes that the ALJ's findings regarding

Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record, as does his consideration of the opinions of Dr. Kapoor, Dr. Barth, and PA-C Young.

### B. Subjective Statements

 Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending

that the ALJ erred in failing to discuss evidence that supports these complaints. *Plaintiff's Brief*,

ECF No. 20, pp. 44−47. Plaintiff's arguments are not well taken.

 "Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the

ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[10]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 22–23. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 22; *see also* R. 23 ("As for the claimant's statements about the intensity, persistence and limiting effects of her symptoms, they are inconsistent with the evidence."). As previously discussed, the ALJ also detailed years of medical evidence and record testimony to support his findings, explaining as follows:

> The claimant alleged disability due to rheumatoid arthritis, fibromyalgia, major depression, anxiety, panic attacks, and arthritis in multiple joints (2E). At the hearing, the claimant testified that she stopped working due to pain in her hips and swollen hands (Hearing Testimony). She also testified that medication does not provide any relief from her fibromyalgia symptoms (Hearing Testimony). The claimant reported that she could only sit and stand for five to ten minutes at a time (Hearing Testimony). She also alleged limitations to lifting, squatting, walking, sitting, stair climbing, using her hands, bending, standing, reaching, kneeling, remembering, completing tasks, and concentrating (3E).
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The claimant complained of pain in multiple joints, including in her hips, ankles,

---

[10]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

arms, hands, fingers, and wrists (1F/38, 4F/1, 2, 5F/12, 6F/1, 11F/2, 12F/1). She also complained of low back pain that radiated to her lower extremities (1F/2, 4F/2, 6F/1). The claimant's fingers and joints in her hand were tender to palpation (6F/2, 20F/22, 29F/1). She also reported having some swelling in her fingers and she had decreased grip strength (4F/1, 12F/2, 19F/5). A provider noted that the claimant had multi-joint swelling and her hands showed some joint deformity in the form of semi-claw hands (12F/1, 18F/21, 29F/1). The claimant had an antalgic gait (12F/2, 23F/7, 29F/2). This evidence supports a limitation to the reduced range of the light exertional level with occasional reaching overhead and frequent reaching in all other directions as well as frequent fingering and handling. However, no additional limitations are supported, as there was no clubbing or nodules on her fingers (4F/2). Diagnostic imaging did not reveal any bone destruction (6F/1). She does not have any history of fluid accumulation in her joints and there was no evidence of any fluid removal from any of her joints (6F/1). The claimant had full range of motion in her fingers, hands, and wrists (6F/2). She also had normal grip and pinch strength (6F/2). She had full range of motion in her hips and knees (6F/3). There was also no evidence of any muscle atrophy (6F/2). Additionally, the claimant had normal musculoskeletal strength (8F/45, 19F/5). She had a normal gait (4F/2, 6F/2, 8F/14). Range of motion testing was within normal limits at another exam (4F/2). While she had an incomplete squat, the claimant was able to walk on her heels and toes without any difficulty (6F/2). She was able to rise from a seated position without assistance (8F/14, 30). Her sensation was intact (8F/14, 30). Moreover, providers noted that the claimant did not require any assistive device for ambulation (12F/4, 23F/2, 29F/4). As such, no additional physical limitations are supported.

The claimant complained of migraine headaches that occurred daily (8F/11, 19F/1). After running out of medication, the claimant reported a worsening in her migraine intensity and frequency (19F/1). Still, diagnostic imaging of the claimant's brain revealed microadenoma of the pituitary gland, but was otherwise unremarkable (7F/1). The claimant reported that sleeping in a dark room alleviates her symptoms (19F/2). Her cranial nerves were also intact (8F/14, 19F/5). Further, the claimant reported that Elavil helped decrease the frequency of her headaches (8F/42). The claimant also complained of nausea and vomiting with watery diarrhea (30F/180). A provider noted that the claimant had acute gastroenteritis (30F/185).

R. 22−23. In the view of this Court, this record provides substantial support for the ALJ's

decision to discount Plaintiff's subjective statements as inconsistent with the record evidence.

*Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, contends that the ALJ did not adequately explain his rejection of

Plaintiff's complaints where the ALJ did not consider Plaintiff's testimony regarding her

"limited activities of daily living, and her lack of response to treatment." *Plaintiff's Brief*, ECF

No.20, p. 47. Plaintiff's argument is not well taken. As set forth above, the ALJ expressly considered Plaintiff's testimony regarding her physical limitations and that her medication did not relieve her symptoms of fibromyalgia. R. 22. Moreover, the ALJ did not completely discount Plaintiff's subjective complaints; instead, he explained how he fashioned a RFC that took into consideration Plaintiff's complaints of pain. R. 22–23; *see also Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30, 2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but still retained the capacity for light work with additional restrictions"); *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016) ("The claimant need not be pain-free to be found 'not disabled.'"). In any event, the Court must affirm the ALJ's decision when it is supported by substantial evidence even if Plaintiff points to evidence that supports the opposite conclusion. *See Johnson*, 497 F. App'x at 201; *see also Lewis v. Comm'r of Soc. Sec.*, No. CV 15-1587, 2016 WL 4718215, at *7 (D.N.J. Sept. 9, 2016) ("The fact that the ALJ did not discuss all of the § 404.1529 factors does not warrant remand, given that his credibility determination was supported by substantial evidence."); *Mason v. Colvin*, No. 15-1861, 2015 WL 6739108, at *6 (D.N.J. Nov. 3, 2015) ("The list [of factors contained in 20 C.F.R. § 404.1529(c)] is not comprehensive, nor is it mandatory for ALJs to go through each factor on the list in their opinions.") (citing 20 C.F.R. § 404.1529(c)(3)).

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn*, 717 F.2d at 873); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 25, 2022                             *s/Norah McCann King*
                                                    NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE